THE STATE (SAMUEL ALLEN ET AL. PROSECUTORS) *vs.* HOLMES. CONOVER ET AL.

1. Where a sheriff, having an execution against the goods and chattels of one person, levies upon and sells the goods of another, it is not a breach of the condition of his official bond, and does not make his sureties liable to the party whose property is taken.

2. If an officer seize the property of a person not named in the writ, it is not an official act done by virtue of his office, but unofficial, and done by color of the office.

3. In such case the officer is guilty of a *tort*, for which he is liable as an individual to the party injured, but it does not entitle the party to prosecute the officer upon his official bond.

On Demurrer to Narr.

Argued at November term, 1859, before the CHIEF JUSTICE and Justices HAINES, VREDENBURGH, and VAN DYKE.

*B. F. Randolph,* for defendants.

*Littell* and *Dayton*, for plaintiffs.

The CHIEF JUSTICE. General demurrer to the declaration in an action upon a sheriff's bond. The breach assigned is, that Conover, as sheriff of the County of Monmouth, by virtue of executions in his hands against Edmund De

Groot, levied upon and sold the goods and chattels of the prosecutors, then in possession of De Groot as bailee, though the said goods were claimed by the prosecutors, and the sheriff forbid to sell the same.   The declaration also avers, that in action of trover brought by the prosecutors against Conover for the recovery of the said goods, the plaintiffs recovered judgment for $1003.34 damages, and $63.41 costs; that an execution against Conover upon the said judgment has been returned unsatisfied, and that by reason thereof an action hath accrued to the plaintiffs to recover against the sureties upon the bond of the sheriff.

Whether the facts stated constitute a breach of the sheriff's bond, for which his sureties are liable, depends upon the terms of the contract.

The condition of the sheriff's bond is, that he "shall well and truly execute the office of sheriff, and in all things touching his said office shall well and truly, justly and faithfully, perform and execute the same."     Nix. Dig. 749, § 2.

The statute has clearly indicated the nature of the obligation and the extent of the liability of the sureties by providing that any person who may be aggrieved "by the neglect, default, malpractice, or misconduct of any sheriff in his office shall be entitled to prosecute the bond and to relief against the sureties."   Nix. Dig. 761, § 11, 12.

By the terms of the statute, "the neglect, default, malpractice, or misconduct of the sheriff in his office" constitute a breach of the bond.    If the sheriff, under an execution against A., levy upon the goods of B., the act is not done by virtue of his office.   He derived no authority whatever from his office or from the execution in his hands to seize the goods of a third party.   He had precisely the same right as a private individual to seize the goods as he had when invested with office and armed with legal process. The act was done outside of his office.   He acted, it is true, colore officii, but not virtute officii.   In the action brought by the prosecutors against the sheriff for the tort

he was not sued as sheriff, nor was he complained of for any breach of official duty. He was sued simply as an individual for a *tort* committed by him in his private capacity. And in that action the defendant could not have justified by virtue of his office nor of the process in his hands, nor could his official conduct in any way have been drawn in issue. If, on the other hand, the sheriff had been sued by the defendant in execution for any abuse in the execution of the writ, the conduct of the sheriff in office would be drawn directly in question, and an absence of official malpractice or misconduct would have constituted a good defence to the action. In an action by a third party against the sheriff for taking goods by color of the writ, it is immaterial with what motive the sheriff acted. The plaintiff is entitled to recover for the wrong done, whether the sheriff, in the seizure of the goods, acted wantonly and maliciously or in good faith under a mistake as to the ownership of the goods. But can an honest mistake as to the ownership of goods, and a *bona fide* act done in consequence of such mistake, constitute malfeasance or misconduct in office ? The sheriff is bound, in the execution of a writ of *fieri facias*, to levy upon all the goods of the defendant in execution within his bailiwick. If he neglect or refuse to do so he is guilty of official misconduct, and his sureties become liable. But if the sheriff can show that he was unable to find the goods of the defendant after diligent inquiry, he is not liable for malfeasance in office, although the plaintiff in execution suffer loss from the omission to levy. The complaint against the sheriff is not that he did not perform his duty, nor that he performed his duty improperly, but that he acted beyond his duty ; that he did an act which neither his writ nor his office authorized him to perform, and thereby became liable as a *tort feasor.*

The official bond of a constable under our statute, though variant in phraseology, is substantially the same as that of the sheriff. The condition of the bond is, that he

shall truly and faithfully perform all the duties enjoined on him as constable. *Nix. Dig.* 119, § 1.  If the officer having a *capias* against A. should refuse to arrest him, the refusal to make the arrest would clearly violate the condition of the bond, because it would be a failure to perform the duty enjoined on him as constable.  But if on the *capias* against A., he arrest and imprison B., though the officer be guilty of a *tort*, for which B. may maintain his action, yet the false imprisonment of B. is not a breach of his official bond.  The failure of the officer in such case to perform his official duty consists in the failure to arrest the defendant, which it was his duty to do, not in the false imprisonment of a third party, which was entirely without the scope of his official duty or authority.

It is urged that the sheriff was guilty of a breach of official duty because, after claim of property made by the prosecutors, he did not convene a jury to try the right of property before proceeding to make sale by virtue of his execution.  The law does not require the officer to convene a jury to try the right of property.  He is required to delay the sale for the space of ten days, that the *claimant* may have a jury convened to try his right.  But even this he may not do if the plaintiff in execution elect to proceed to a sale ; for if the plaintiff, on receiving notice of the trial of the right of property, shall indemnify the sheriff against the demand of the claimant, then he shall suspend any further proceedings in the trial, and proceed to sell.  *Nix. Dig.* 249, § 11, 12.  For all that appears, the sheriff in this very case may have been indemnified by the plaintiff in execution ; and if so, an attempt is now made to convict him of misconduct in office for doing the very thing that the statute imperatively requires he shall do.  How can it be official misconduct in an officer to do an act enjoined by the statute as a part of his duty ? But this is not all.

The sheriff having in his hands an execution, and finding goods in the possession of the defendant, acts upon

the legal presumption that they are his goods, and accordingly makes a levy and return. The goods are subsequently claimed by a third party. The plaintiff in execution indemnifies the sheriff, and the statute directs that he shall thereupon proceed to sell. Now, if the sheriff refuse to sell, he violates his duty and the condition of his bond. If he proceeds to sell he is equally guilty of a breach of official duty, and renders his sureties liable. Such a result could never have been within the comtemplation of the legislature.

This statute has now been in force in New Jersey, under its colonial and state governments, for more than a century. This, so far as we are aware, is the first attempt ever made to hold that *torts* committed by the sheriff, not in the execution of his office, operated as a breach of his official bond or rendered his sureties liable. If no reported case can be found to the contrary, it is because it has not been regarded as an open question. Such we believe to have long been the well settled conviction of the profession as to the true construction of the sheriff's official bond. It was on this ground mainly that the court, upon the argument, declined to hear counsel in support of the demurrer. Since the argument, I have carefully examined all the authorities cited in support of the action by the counsel of the plaintiffs; and although some of the state courts have adopted a different view, I find nothing in the reasons advanced to change the conviction which was entertained and expressed by this court on the argument. The question was very elaborately discussed, and numerous authorities cited, in the recent case of *The People* v. *Schuyler*, 4 *Comst.* 173. In that case the Court of Appeals, by a divided court, overruled the decision of the Supreme Court, and held that a seizure of the goods of a third party by the sheriff under an attachment was a malfeasance in office and a breach of the condition of his official bond. Notwithstanding the respect due to so distinguished a tribunal, I find nothing in

the arguments advanced that have created a doubt as to the true construction of our statute.

I am of opinion that the defendant is entitled to judgment upon the demurrer.

HAINES, J. The question presented by the demurrer is, whether a sheriff, who having an execution against the goods and chattels of one person, levies upon and sells those of another, is guilty of a breach of the condition of his official bond, and thereby renders his sureties liable.

The condition of the bond set out in the declaration is in accordance with the provisions of the statute, (*Nix. Dig.* 749, § 2,) and is, that "the said Holmes Conover shall well and truly execute the office of sheriff, and in all things touching his office, shall well and truly, justly and faithfully, perform and execute the same, as well in respect to all persons concerned as to the state." The 11th section of the same act provides that it shall be lawful for the governor, upon application in writing by any person "who may be aggrieved, or suppose himself to be aggrieved, by the default, malpractice, or misconduct of any sheriff, in his office," to order a prosecution of his official bond.

By the terms of the bond and its condition the sureties became liable for the official acts of the principal. They stipulated that he should well and truly execute the office of sheriff, and that in all things touching his office he would well and truly, justly and faithfully, execute and perform the same ; and they are not subject to prosecution except for some alleged neglect, default, malpractice, or misconduct of the sheriff in his office.

Their liability, then, depends upon the question, whether the conversion of the goods of the relators under an execution against another party was an official act. If it was, they are liable ; if not, they are not liable, and the demurrer must be allowed.

In examining this question, it may be premised that

the liability of sureties is not to be extended by construction, but to be limited to the terms of the obligation, considered according to their true intent and meaning.

In *The People* v. *Sparker et al.*, 18 *Johns. Rep.* 396, it is said that to render sureties liable, the case must be within the words and plain meaning of the statute. It would be against public policy, as well as against common justice to prescribe the terms of the bond, and then, by construction, to extend its obligations beyond the fair intent and plain meaning of those terms.

A man who holds the office of sheriff may do many things which will render himself personally liable, but for which his sureties are not responsible. The sureties do not bind themselves to protect the public against every act of their principal, nor do they become his sureties to keep the peace. And it is necessary to determine what acts of such a person are official and what not official.

It is a principle, long and well established, that official acts are those which are done by virtue of the office ; such as, if properly done, exculpate both the officer and his sureties from responsibility, but which, if neglected or improperly done, render both liable. If the authority is exceeded, or the duty omitted, an action may be maintained against the officer in his official capacity, and his sureties held responsible for it.

Unofficial acts are such as are committed under color of the office, such as cannot be lawfully done and cannot be justified by the official character of the sheriff, or by any process in his hands. *Seely* v. *Birdsall*, 15 *Johns. Rep.* 267 ; *Alcock* v. *Andrews*, 2 *Esp. C.* 540, *note ; Pratt, Just.*, in *The People* v. *Schuyler et al.*, 4 *Comst. Rep.* 187.

If a sheriff, having an execution in his hands, seize the property of a stranger he is a trespasser. He may be resisted notwithstanding his being a sheriff and having the execution. If he calls for assistance, he and the persons assisting are all trespassers, and may be resisted force by force. If the person resisting be indicted for obstructing

State v. Conover.

an officer in the discharge of his duty, it must appear that the person obstructed was acting in an official capacity, with legal process or other authority to do what he was attempting when so obstructed. If it appear that he was acting under color, and not by virtue of official authority, the party resisting is not liable to a civil or criminal prosecution. One acting under color of authority cannot justify the act. He is not acting officially. If sued for the trespass, it is in his private capacity. If he plead authority, and seek to justify, the issue tendered is to try whether he was acting in his private or official capacity. If determined against him, it is because the act was without authority and extra-official. Where there is no authority there is no office, and the act cannot be *virtute officii*. He is as much a trespasser as if he had no writ or were not an officer. He acts not by virtue of his office, or under any authority conferred by it, but under color or pretence of the office; and it is of no consequence whether he seized the goods by mistake or design, he is equally a trespasser. The question is not whether his intentions were good, but whether his power was sufficient.

For such unauthorized act, the sureties never assumed any responsibility. It was not done in the execution of his office nor was it anything touching his office. It was no default, malpractice, or misconduct in his office. To say otherwise would require that the condition of the bond be extended beyond the words and the plain meaning and clear intent of it. Such appears to me to be the clear result of the inquiry upon principle. For authority, we find no case in point in this state. The absence of any decision of a question so important is persuasive proof that the profession has not regarded the sureties of a sheriff liable under such circumstances.

In England we find no direct authority, for the obvious reason that sheriffs there are not required to enter into official bond with sureties. They enter into recognisance to the crown for the faithful performance of their duties

in regard to the revenue, and to the court of exchequer for the execution of its writs and precepts; but a party aggrieved by any malfeasance has no relief from that source. Sheriffs there are required to be of sufficient freehold ability to·meet the claims of all parties injured, and are liable only in suits against themselves or to amercement for neglect of duty.

There are, however, some cases in which the question of what acts are *colore officii* and what *virtute officii* are discussed, and which may aid in this investigation.

The statute of 24 *Geo.* 2, *ch.* 44, § 8, provides that an action against a justice, for anything done in the execution of his office, or against any constable acting as aforesaid, shall be brought within six months after the act committed. Under this statute, it was held that a constable who, acting under a warrant commanding him to take the goods of A., took those of B., believing them to belong to A., was entitled to the benefit of the limitation. The court considered that the officer was acting in good faith, and was therefore to be considered within the provision of the statute, which was intended not to deprive the party injured of his remedy, but to require diligence in pursuing it; and that being remedial, the provision might be extended by construction to protect an officer acting in good faith. *Parton* v. *Williams*, 3 *Barn. & Ald.* 330.

A case more in point is found in 1 *Barn. & Ald.* 227, *Theobald* v. *Crichmore*, where a constable, having a warrant of distress to levy a church rate, unlawfully broke and entered the dwelling house of the plaintiff, who was the defendant in the warrant; and it was held that the officer was acting in pursuance of his authority, and that, although he exceeded it, he was within the statute limiting the time for bringing the action.

So in *Smith* v. *Wiltshire et al.*, 2 *Brod. & Bingham* 619, where constables, under a warrant to search a house for black cloth which had been stolen, took cloth of other

colors, and were held to be within the limitation of the statute, they acting under authority, but abusing it.

In *Alcock* v. *Andrews*, 2 *Esp. Cases* 540, in a note, Lord Kenyon took the distinction between acts done under *color* and by *virtue* of an officer, and said, that "it had often been held that a constable acting *colore officii* was not protected by the limitation of the statute of 24 *Geo.* 2, *c.* 44, when the act was of such a nature that the office gave him no authority to do it, for in doing that act he was not to be considered as an officer; but where a man, doing an act within the limits of his official authority, exercises that authority improperly, or abuses the discretion placed in him, to such cases the statute extends, the distinction being between the extent and the abuse of the authority."

We are referred to the case of *The People* v. *Schuyler*, 4 *Comst.* 173, decided in the Court of Errors of the state of New York, as definitively settling, in that state, the liability of the sureties of a sheriff who seizes the goods of a person not a defendant in the writ.

The reasoning of the majority of the court in that case has failed to satisfy me of the soundness of such a conclusion. It is the opinion of a divided court of five judges against three dissenting. It is not expressive of much confidence in its results. Judge Gardiner, who delivered the opinion of the majority, says, "we are inclined to regard the original taking as a misapplication by the sheriff of the authority of his office, for which his sureties are responsible." The learned judge seems to disregard the distinction between acts done under color and those done by virtue of the office, and does not, I think, give a proper construction to the authorities to which he refers and on which he relies. He considered the case of *ex parte Read*, in 4 *Hill* 573, and *ex parte Chester*, 5 *Hill* 555, in conflict with each other; and that when the latter was determined, the liability of sureties under such circumstances was an open question. On an examination of those cases no conflict appears.

U*

In *ex parte Read*, application was made to the court for leave to prosecute the official bond of a sheriff, who had taken the goods of the relator under an execution against another, and the court denied the motion on the ground that the seizure of the goods was not *virtute officii*.

In *ex parte Hill*, the court granted leave to prosecute the bond of a sheriff who had made a false return upon an execution by returning *nulla*, notwithstanding the defendant in execution had real and personal property which might have been levied upon.

These cases are entirely harmonious, and recognise the distinction between acts done by virtue of the office and those done under color of it.

The opinion in question seems to rely upon the case of *Skinner* v. *Phillips*, 4 *Mass. R.* 69, as an authority on this point. The *scire facias* in that case recites that the relator had suffered damage by and through the misfeasance and malfeasance of the sheriff in his office, and the court adjudged " that the party injured by the malfeasance of the sheriff, or of his deputy, is entitled to relief on his bond." What was the nature of the malfeasance, the report does not disclose, but it appears to have been some wrong done by the sheriff in his official capacity, and we have the fair inference that it was done by virtue of his office, and not by color of it. Surely the case is no authority for disregarding that distinction.

The cases of *Archer* v. *Noble*, 3 *Greanleaf R.* 418, and *Harris* v. *Hanson*, 11 *Maine* 241, also relied upon in *The People* v. *Schuyler*, are directly in point, but they appear to have been decided in part upon the weight of the opinion in *Skinner* v. *Phillips*, which, as has been shown, does not determine that question, and in part on the principle, that a sheriff is liable for the acts of his deputy, which is foreign to the subject.

The case of *People* v. *Schuyler*, being the determination of the highest tribunal, may settle the law of New York, but its reasoning, for which alone it can be used here, is

not such as to justify us in adopting it as the law of New Jersey.

The opinion of the dissenting judges is, in my judgment, a better exposition of the law, and more in conformity with the true principles of this question, and is also in accordance with the previous decisions of the courts of that state bearing upon it.

In *Seely* v. *Birdsall*, 15 *Johns. Rep.* 267, the sheriff was sued for a false return. The statute required that, for anything done by virtue of his office, the action must be brought within the county where the act was done; and it was held that the sheriff was entitled to the benefit of the provision of the statute, the act being done by virtue of his office.

The case of *The People* v. *Spraker et al.*, 18 *Johns. Rep.* 396, was an action on a sheriff's bond. The statute requires the liability of the sheriff to be first fixed by a recovery against him for some default or misconduct in office. The relator had proceeded by attachment for contempt against the sheriff for not returning a writ, and the sheriff had made default by not appearing according to the terms of his recognisance, and the court determined that it was not evidence of such misconduct in office as to render the sureties liable.

The same principle was recognised in *Morris* v. *Van Voast*, 19 *Wend.* 283.

The cases of *ex parte Read* and *ex parte Chester*, before mentioned, are in accordance with these.

We are also referred, by the counsel of the plaintiff, to other authorities, which were also relied upon in the majority opinion of *The People* v. *Schuyler*, namely, *Carmack* v. *The Commonwealth*, 5 *Binney* 184, *Forsyth* v. *Ellis*, 4 *J. J. Marshall* 299, and *The Commonwealth* v. *Stockton*, 5 *Monroe* 192.

These all, directly or indirectly, hold that the sureties of a sheriff are liable where the goods of one person are taken upon an execution against another.

The principles on which these cases were determined, and the reasoning on which they are founded, differ so widely from what we are accustomed to regard as correct that they can have but little weight here. In the case of *Carmack* v. *Commonwealth*, the ground of the liability is chiefly the fact that no property qualification is necessary to render a person eligible to the office of sheriff, and that persons of small property are often elected, and the smallness of their property is apt to excite compassion, and thus promote their election. Hence it is said, " that public policy and public security require a liberal and extended construction of the condition of the recognisance for the faithful performance of the trusts and duties to his office lawfully pertaining." And reference is also made to the preamble of their statute, as requiring such construction.

In *Forsythe* v. *Ellis*, 4 *J. J. Marshall* 299, it was held that a sheriff and his sureties were liable to a purchaser of property sold on an execution for defect of title, the sheriff having, on an execution against one man, sold the property of another. Such a principle is not in accordance with the long and well settled rules of our state, and I see no good reason why we should adopt it here. To hold that a sheriff is liable to a purchaser of property at his sale for defect of title would, in this latitude, be an amusing novelty.

In *Commonwealth* v. *Stockton*, 5 *Monroe* 192, it was distinctly determined that a sheriff's sureties are liable for taking the property of a stranger to the execution; but the opinion is expressly deduced from the principle, that a sheriff is liable for the official acts of his deputy. " It is unquestionably true," remarks Chief Justice Ousley, " that for any illegal act which may be done, either by the sheriff or his deputy by color of legal process, the sheriff is liable in his official capacity to the person injured, whether that person be a party to the process or a stranger. It is on this principle that actions have been

frequently sustained against sheriffs for the acts of their bailiffs in taking, by color of execution, the property of strangers." And hence he reasons that it follows conclusively that, for any abuse of the process of law, the party injured, whether a party to the process or a stranger, is at liberty to sue the sheriff and may sustain an action on the bond against him and his surties. Such reasoning does not convince me of the propriety of adopting that as the law of New Jersey.

From every view I can take of the case before us, both on principle and authority, I am satisfied that the seizing of the property of a person not named in the writ is not an official act done by virtue of the office, but unofficial and done by color of the office, for which the sureties are not liable. And hence the demurrer must be sustained, and judgment rendered for the defendant.

Justices VREDENBURGH and VAN DYKE concurred.